5-3476                                      386 S. W. 2d 939

Opinion delivered February 22, 1965.

*Jeff Mobley* and *William R. Bullock,* for appellant.

*McMath, Leatherman, Woods & Youngdahl,* for appellee.

CARLETON HARRIS, Chief Justice.   On June 26, 1961, at Russellville, appellee, Wanda Lee Tillman, was a passenger in an automobile operated by her husband, appellee Roy Tillman, Jr.   While stopped at an intersection, the automobile was struck in the rear by a car driven by appellant, Mrs. A. B. Cox.   Subsequently, Mrs. Tillman instituted for alleged injuries sustained, and Mr. Tillman sought damages for loss of consortium.   On trial, the jury returned a verdict for Mrs. Tillman in the amount of $7,500.00, and for Mr. Tillman in the amount of $1,500.00.   From the judgments entered thereon, appellant brings this appeal.

Only one point is argued for reversal, *viz,* that there was no substantial evidence to support the jury's verdicts, and the judgments should accordingly be reversed and the cause dismissed.

According to appellant's evidence, Mrs. Cox drove up behind the Tillman car, which had stopped at a stop sign, and she (Mrs. Cox) came to a complete stop herself. She testified that she looked around to the back seat to check on her two young sons, who were asleep, and that, apparently, her foot slightly released the brake, and the

car started "creeping" and struck the rear of the Tillman vehicle. Mrs. Cox testified that she got out of the car, and looked at the Tillman rear bumper, but could find no damage; neither was there damage to the front of the Cox vehicle. She stated that Mr. Tillman said that no one was hurt, and that Mrs. Tillman made no complaint of injury.

Vernon Ferguson, a patrolman with the Russellville Police Department, testified that there was minor damage to each vehicle, but that no report was made of the occurrence, since the accident was minor, and the parties agreed that they could settle it among themselves. He stated that there was slight damage to the Tillman bumper. Proof established that the bumper damage was repaired at a cost of approximately $43.00.

Since the only question before us is whether the verdict was supported by substantial evidence, there is no need, of course, to set out in detail evidence offered by appellant, for we are only concerned with whether the evidence offered by appellees, and upon which the verdict was based, was of a substantial nature.

We think the evidence was more adequate to present a jury question. Mrs. Tillman testified that the impact from the rear was unexpected, and that a few minutes after the occurrence she suffered a severe headache, which started in the neck and went up to the back of the head; that she took aspirin for about a week, but the headache continued to grow worse, and she then consulted Dr. Lane at Dover, who treated her approximately two weeks. This treatment consisted of heat and medication. Thereafter, she consulted Dr. Balkman, whose treatment consisted of physical therapy, message, and heat. Later, ultrasonic treatment was given by Dr. David Williams, who also prescribed a cervical collar, which she wore about five months. She was then referred to an orthopedic surgeon, Dr. Thomas M. Durham of Hot Springs, whose testimony will be subsequently discussed. Mrs. Tillman testified as to extreme nervousness, tenseness, intense pain, and dizzy spells, which caused a loss of the

sense of balance. She stated that none of these symptoms were present prior to the alleged injury complained of.

Mr. Tillman verified that his wife had suffered intense pain, and testified that she was placed in the hospital by Dr. Durham, and remained there for three weeks; that she went back a second time for two weeks, and returned to the hospital a third time for another week. He testified as to the hospital, medical, and drug bills, and also mentioned that 'it had been necessary to employ extra help for the house work.[1] These bills totalled $3,052.91. He said that his wife remained in traction for three or four months.

Dr. David Williams testified that on examining Mrs. Tillman, he found a considerable tenderness along the cervical spine, and a considerable amount of muscle spasm. The doctor treated her with muscle relaxants, pain relieving drugs, and ultra-sound equipment. After a few days, he prescribed the cervical collar, which eliminates or relieves excessive motion in any direction, particularly forward and backward. He made a diagnosis of traumatic myositis, and testified that Mrs. Tillman had what is commonly known as a whiplash injury. Dr. Williams explained a whiplash injury as follows:

"Well, technically, it's based upon the fact that an individual, whatever speed they may be traveling, whether it's parked, moving or whatever it is, are struck from behind for the most part. Actually, it is the opinion of some at least that injuries of similar nature could be sustained, not necessarily from behind, but from any direction, but that moving force; that is, moving at a speed, in excess of that which individual is, whether he's sitting still, is struck from behind."

"* * * it is very obvious that any time an individual is sitting or occupying a position wherein they are struck from behind by any moving object that carries impact to any degree at a rate of speed in excess of that

---

[1] This particular item was listed at $391.75.

which the person is traveling, could create a similar injury.''

He testified that Mrs. Tillman's progress, up until the time of prescribing the cervical collar, was very discouraging.

Dr. Thomas M. Durham, to whom Dr. Williams referred Mrs. Tillman, by deposition, testified that, at the first examination, he found that appellee had suffered a loss of approximately twenty percent of motion in the neck in all planes, and some paravertebral muscle tightness. He stated that the symptoms which Mrs. Tillman indicated, and his findings, were consistent with a rear end type collision. Testifying further, the doctor stated that Mrs. Tillman was admitted to St. Joseph's Hospital on August 30, 1961, and remained there through September 20, 1961; that she received cervical traction for about eight hours a day, was given physical therapy treatment twice daily, and drug medication. He next saw her on September 26 in his office, and also on October 10, and on this occasion, although noting some improvement, found there was more tightness on the right side of her neck. Her range of motion was improved, except for bending to the right side. On October 24, she was again examined, and because of the increase in symptoms along the right side of the neck and shoulders, was readmitted to the hospital. She was thereafter discharged on November 6, and was again examined on November 20, at which time she showed improvement. Mrs. Tillman was subsequently examined on December 20, and was next seen in the office on January 22, 1962. On this date, she was re-hospitalized because of a further flare-up. Appellee remained in the hospital until February 1, 1962, and again visited Dr. Durham at his office on February 16. On that date, her neck complaints had subsided, though she was still wearing the collar most of the time. Because of pain in the upper part of her back, a tailor-type corset was prescribed. This corset extends from the hips to the shoulders. Straps applied around the shoulders tend to hold the patient erect and prevent flexion at the upper part of the back. Further examinations were made

on March 16, April 25, and June 6. The range of motion of the neck was not entirely normal, but definitely improved, and she continued to wear the brace. Mrs. Tillman complained of pains in the left breast area, and it was the opinion of Dr. Durham that this pain was casually connected to her cervical spine injury. She continued wearing the corset until August 8, 1962, at which time, the doctor felt, for the first time, that her neck motion was essentially normal. On cross-examination, Dr. Durham testified that he felt the long period of illness and of convalescence of the patient was entirely consistent with a rear end collision in which the damage to the vehicle would range somewhere from $20.00 to $40.00. According to Dr. Durham's evaluation, appellee had a five percent disability to the body as a whole.

The deposition of Dr. John M. Hundley of Little Rock was introduced on behalf of appellant, and he likewise found tenderness in the neck, and tenderness of the dorsal spine throughout the upper dorsal spine area. Extending or bending the neck backward was 75% normal, accompanied by pain in the upper part of the neck. Dr. Hundley stated that he found no objective evidence of an injury, which would give rise to the condition of the patient, but he considered her complaints as being real; it was his view that the pain complained of could be due to a congenital condition of Mrs. Tillman's spine. He said that she was very tense and nervous, and was rather "jumpy." On cross-examination, the doctor stated that a parked automobile struck in the rear by another vehicle can produce an injury to the cervical spine, sometimes referred to as a whiplash injury, of the passenger in the stoped car. He also testified that there is not necessarily any relationship between the injury a patient receives and the speed of the vehicle if the patient does not know that the car is going to be hit; likewise, the doctor said there is no particular relationship between the damage to the vehicle and the injury to the patient. According to Hundley, some symptoms of such an injury may be delayed for quite some period of time.

Appellant's contention is that the impact of her car against the Tillman car was too slight to have caused the injuries complained of, and appellant feels that Mrs. Tillman's condition was not due to this occurrance. However, it will be noted that both Dr. Durham and the physician whose testimony was offered by appellant (Dr. Hundley) testified that the type of collision described could cause a whiplash injury of the severity sustained. Whether the injury was received at the time that the Cox car struck the Tillman vehicle was entirely a question for the jury to determine, and there was ample evidence to sustain the jury verdict.

Affirmed.

George Rose Smith, J., not participating.